**BROMLEY CONTRACTING CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 443–84C.

United States Claims Court.

Aug. 20, 1986.

Martin J. Cohen, New York City, for plaintiff.

Eileen P. Fennessy, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

### ORDER

MOODY R. TIDWELL, III, Judge:

This is a contract case which comes before this court on Defendant's Motion to

Dismiss Plaintiff's Second Cause of Action. Plaintiff seeks a *de novo* review of his second cause of action asking for reformation of its contract with the United States Coast Guard. After a careful review of the pleadings and the submitted papers, the court grants Defendant's Motion to Dismiss Plaintiff's Second Cause of Action.

## FACTS

On June 30, 1975, plaintiff was awarded a contract by the United States Coast Guard which required, among other things, restoration and waterproofing of exterior masonry surfaces on various buildings at the United States Coast Guard Station, Governor's Island, New York. Consequently, plaintiff submitted nine claims to the contracting officer which for our purposes we shall refer to as *"Bromley I."* The principal claims in *Bromley* I involved a dispute over the measurement of the repaired area for purposes of payment Claim 1A (restoration), $94,703.00; Claim 2 (waterproofing), $27,563.71; and the scope of restoration required by the contract, Claim 1B (increased requirements), $672,227.60. In the other claims, plaintiff requested compensation for various items: increased requirements encountered in performing a modification for the installation of additional bricks (Claim 3—$1,376.00); increased costs of operating over an extended performance period (Claim 4—$95,000.00); differing site conditions encountered in removal and replacement of windows (Claim 5—$31,648.12); increased caulking caused by the government's inaccurate interpretation of the caulking specifications (Claim 7—$1,692.92); increased cost of removing ivy and vines not required to be removed by the contract (Claim 8—$712.00); and an increase in contract price under the Variation in Estimated Quantities Clause (Claim 9—$314,509.07).

On September 15, 1977, the contracting officer issued her final decision in *Bromley* I wherein she denied all of plaintiff's claims

except one which was allowed in part. On September 26, 1977, plaintiff appealed the contracting officer's decision in *Bromley* I to the Department of Transportation Contract Appeals Board (the Board) pursuant to the disputes clause of the contract.

Before the Board had reached its decision in *Bromley* I, plaintiff submitted an additional claim to the contracting officer on April 18, 1979, in the amount of $816,851 for reformation of the contract. This reformation claim was brought by plaintiff pursuant to the Contract Dispute Act of 1978 (CDA) and was premised upon a misunderstanding between the parties as to the meaning of the term "cracked joints."[1] The contracting officer denied plaintiff's reformation claim by a final decision dated May 23, 1979, concluding that she had already decided the merits of the same factual dispute in her earlier decision of *Bromley* I.

Plaintiff appealed the contracting officer's decision on its reformation claim to the Board on June 19, 1979. Thereafter, in an effort to avoid delaying any action in *Bromley* I, plaintiff requested that its reformation count be dismissed without prejudice. The Board granted this request and dismissed plaintiff's reformation count without prejudice on September 18, 1979. After the parties' attempts to settle the damages in *Bromley* I proved unsuccessful, plaintiff sought a decision from the contracting officer on damages, which for our purposes we shall refer to as *Bromley* II. Following an unacceptable decision from the contracting officer in *Bromley* II, plaintiff appealed to the Board on August 3, 1982. On March 27, 1984, the Board issued its decision denying all of plaintiff's claims.

Plaintiff subsequently filed its action in this court on August 29, 1984, seeking relief on three counts. Under count I, plaintiff sought review of certain portions of the Board's decisions, which it will receive in good time and need not be discussed fur-

---

1. The court notes that this is the same factual dispute that plaintiff presented to the contracting officer as claim 1B in *Bromley* I.

ther in this Order. Under count II, plaintiff seeks reformation of the contract due to mutual mistake. In Count III, plaintiff seeks attorneys fees incurred while defending the government's cross-claim asserted during the Board's proceedings in *Bromley I*.

On November 2, 1984, defendant filed a Motion to Dismiss plaintiff's Complaint on the grounds that the claims asserted were barred by plaintiff's executed release, or in the alternative, that plaintiff's second cause of action was barred by the Statute of Limitations prescribed by the Contracts Disputes Act, and 28 U.S.C. § 2501 (1982), or that it should be transferred to the Department of Transportation Contract Appeals Board.[2]

### DISCUSSION

On July 2, 1985, this court denied defendant's contention that plaintiff's claim was barred by plaintiff's release. The court held that there existed sufficient documentation in plaintiff's statement of exceptions to its general release to nullify defendant's request to dismiss this action on the grounds that it was barred by plaintiff's release. The case was not time-barred. Therefore, the court need not address this issue, but will limit its discussion to the remaining allegations.

*Count II—Plaintiff's*
*Reformation Claim*

Defendant's Motion to Dismiss plaintiff's reformation claim is based on the assumption that the Contract Dispute Act (CDA) is applicable. Defendant contends that once plaintiff elected to proceed under the CDA, that election was binding and governs all avenues of appeal available to plaintiff. Defendant further contends that once plaintiff chose the Board as its forum of appeal, it may not proceed thereafter in the United States Claims Court under the di-

rect access provision of the CDA. Plaintiff contends that (1) the contracting officer did not make a final decision on its reformation claim; (2) it was necessary to appeal to the Board in order to exhaust its administrative remedies; and (3) its appeal to the Board on its reformation claim was withdrawn without prejudice to enable plaintiff to seek relief in another forum under applicable existing law. After a careful review the court agrees with defendant and finds plaintiff's arguments to be without merit.

In the instant case, the contract was awarded before March 1, 1979. However, plaintiff initiated its reformation claim on April 18, 1979, after the effective date of the CDA. The CDA brought a provident change to the resolution of government contract disputes. One of the principal changes was to give the contractor the option of direct access to the United States Claims Court rather than appealing the contracting officer's decision to the agency's contract appeals board. Section 16 of the CDA states that the Act applies to contracts entered into on or after March 1, 1979. For contracts entered before this date "the contractor may elect to proceed under this Act with respect to any claim pending before the contracting officer or initiated thereafter." 41 U.S.C. § 601 note (1982).

It is well established that once a contractor chooses a contract appeals board as the forum for its appeal, it may not then proceed *de novo* in this court pursuant to the direct access provisions of the CDA. 41 U.S.C. § 609 (1982); *Santa Fe Engineers, Inc. v. United States*, 230 Ct.Cl. 512, 677 F.2d 876 (1982). A contractor may either appeal the decision of a contracting officer to an agency Board or it may bring a direct access suit in this court, but not both. The CDA specifically provides that:

> ... [I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a con-

2. This assertion was later changed in defendant's reply brief filed October 21, 1985, to preclude the transfer of the action to the Board, placing the burden on plaintiff to seek its optional recourse of filing a motion with the

Board to reinstate its claim which was dismissed without prejudice. Accordingly, the reformed assertion called for a full dismissal of count II for lack of jurisdiction according to 41 U.S.C. § 609 (1982).

tractor may bring an action directly on the claim in the United States Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary.

41 U.S.C. § 609(a)(1) (1982).

In *Santa Fe Engineers, Inc. v. United States*, 230 Ct.Cl. 512, 677 F.2d 876 (1982), the court interpreted "in lieu of" to mean in place of or instead of and "directly" to mean without an intervening space or time, or deviation of course. *Id.* at 515, 677 F.2d at 878. The language "in lieu of" clearly indicates that the contractor has a choice of fora; that does not however allow a contractor to initially pursue its claim *de novo* before more than one forum.

As indicated, the contract was awarded before March 1, 1979, the effective date of the CDA. However, plaintiff initiated its reformation claim on April 18, 1979, after the effective date of the CDA. Following the contracting officer's adverse decision on May 23, 1979, plaintiff elected to take its appeal to the Board; thus, plaintiff lost the right to proceed *de novo* thereafter in this court under the direct access provision of the CDA. The dismissal of the reformation claim without prejudice changes nothing. *Santa Fe Engineers, Inc. v. United States*, 230 Ct.Cl. 512, 677 F.2d 876 (1982). The court concludes that plaintiff's election to file its appeal with the Board is binding and that this court lacks jurisdiction to hear plaintiff's reformation claim. The court also concludes that plaintiff's arguments to the contrary do not change this result and deserve but a brief discussion.

Plaintiff attempted to invalidate its election to appeal to the Board by arguing that the contracting officer's decision was not final. Plaintiff cites *New York Shipbuilding Corp. v. United States*, 180 Ct.Cl. 446, 385 F.2d 427 (1967), to support his position. However, unlike *New York Shipbuilding Corp.*, the contracting officer in the case at bar did make a decision which was properly appealable. *New York Shipbuilding Corp.* is not controlling here. Once plaintiff chose to appeal the contracting officer's decision to the Board, its election was

binding. *Santa Fe Engineers, Inc. v. United States*, 230 Ct.Cl. 512, 677 F.2d 876 (1982).

Plaintiff also relied on *Crown Coat Front Co. v. United States*, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967); *Arthur Venneri Co. v. United States*, 180 Ct.Cl. 920, 381 F.2d 748 (1967); and *Nager Electric Co. v. United States*, 177 Ct.Cl. 234, 368 F.2d 847 (1966), for the proposition that it had to appeal to the Board in order to exhaust its administrative remedies before coming to this court. However, these pre-CDA cases govern the law as it relates to the disputes clause and not the CDA. The cases are therefore not applicable here. Plaintiff's argument is without merit.

Plaintiff then contended that the Board dismissed its appeal without prejudice in order to enable it to seek relief in other fora under existing law. However, the court concluded that this argument was without weight because under existing law and in these circumstances, once plaintiff elected to proceed under the CDA to the Board, there was no other forum available. *Santa Fe Engineers, Inc. v. United States*, 230 Ct.Cl. 512, 677 F.2d 876 (1982). Plaintiff is merely allowed a possible reinstatement of its claim to the Board.

Based on the foregoing, the court concludes that plaintiff's election to file its appeal with the Board of Contract Appeals is binding and that this court lacks jurisdiction to hear plaintiff's reformation claim even if no action was taken on the claim by the Board except to dismiss it without prejudice upon plaintiff's motion.

### Count III—Attorney's Fees

In Count III of its Complaint, plaintiff seeks to recover attorney's fees incurred in defending against the counterclaims which were asserted by defendant in *Bromley* I. In the court's view, it is appropriate to defer judgment on this issue until the court considers the review of the Board's decisions in *Bromley* I and *Bromley* II as set forth in Count I of plaintiff's Complaint.

## CONCLUSION

After a careful review of the submitted papers, the parties' briefs and the applicable case law, the court concludes that plaintiff's election to file its appeal with the Contract Appeals Board is binding and that this court lacks jurisdiction to hear plaintiff's reformation claim *de novo* on appeal until the claim is adjudicated before the Board. The court grants Defendant's Motion to Dismiss Count II of plaintiff's Complaint.

IT IS SO ORDERED.