Robert E. KRUEGER

v.

The UNITED STATES.

No. 90–4042C.

United States Claims Court.

July 27, 1992.

Robert E. Krueger, plaintiff pro se.

Deborah A. Bynum, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant; Carol N. Matheke, Defense Logistics Agency, of counsel.

## OPINION

YOCK, Judge.

This contract dispute is before the Court on the defendant's motion to dismiss the plaintiff's complaint for lack of jurisdiction. For the reasons stated herein, the defendant's motion is granted, and the plaintiff's complaint will be dismissed.

### Facts

This case concerns a dispute over a procurement contract and fourteen purchase orders between the plaintiff, Robert E. Krueger, and the Defense Construction Supply Center (DCSC).[1] On July 7, 1986, the DCSC requested bids for the manufacture of twenty-seven test fixtures for discharge valves. Mr. Krueger, in a letter dated July 30, 1986, advised the DCSC that the item description in the request for bids was incorrect and that a higher level inspection system, in accordance with MIL–I–45208, was necessary for the item. After extending the invitation for bids several times, the DCSC revised the item description and set the bid deadline on the contract for December 15, 1986. Mr. Krueger, in a letter dated December 10, 1986, that he submitted with his offer, stated that his offer included the higher level inspection system, MIL–I–45208, and all fabrication, welding, and inspection in accordance with MIL–STD–278. When the DCSC awarded Contract No. DLA 700–87–C–2005 (hereafter C–2005 contract) to Mr. Krueger on March 26, 1987, clause JO2 of the contract incorporated Mr. Krueger's letter of December 10, as well as three other letters he had submitted. However, the contract did not include the standard clause, EO6, which specifies higher-level contract quality requirements.

Between January 15, 1987, and June 22, 1989, the DCSC issued fourteen purchase orders to Mr. Krueger for various items, including valves, levers, and cylinders. The first order, DLA 700–87–M–BC17, was terminated for the convenience of the Government on May 3, 1988. Mr. Krueger has not submitted a claim for costs incurred under this purchase order.

---

1. The precise relationship between the contract and the 14 purchase orders is unclear from the record.

On June 22, 1988, Mr. Krueger wrote to the administrative contracting officer at the Defense Contract Management Area Office (DCMAO) in San Francisco. In the letter, Mr. Krueger detailed the current status of the contract and eight of the remaining purchase orders. The contract and the eight purchase orders provide most of the basis of Mr. Krueger's complaint. For six of these purchase orders, Mr. Krueger stated that he "required" specific price increases to cover extra costs allegedly caused by Government delays. For the other two purchase orders, Mr. Krueger did not request price increases. As for the C–2005 contract, Mr. Krueger asked for a price increase of $27,000 ($1,000 per unit) to offset additional storage costs for the material. The additional storage time is the result of a dispute over the welder's qualification required by the quality inspection that delayed acceptance of the materials by the Government.

On July 21, 1988, Mr. Krueger wrote to the contracting officer at the DCSC and attached a copy of the June 22, 1988 letter that detailed the status of the contract and the purchase orders. Mr. Krueger reiterated that he could not ship the materials due to a dispute about inspection and requested the contracting officer's assistance in resolving the problem. Also, Mr. Krueger stated that, due to the Government's prolonged delay in answering his requests for clarification or correction of the inspection requirements, he requested equitable price increases.

Over the next year, Mr. Krueger and the Government maintained a correspondence in which they disputed the inspection terms required in the contract and the purchase orders. Finally, on November 13, 1989, a DCSC contracting officer wrote to Mr. Krueger in response to his letters of June 22 and July 21, 1988, and denied his request for a price increase for Contract No. DLA 700–87–C–2005. The letter stated that it was the final decision of the contracting officer and outlined Mr. Krueger's options for appealing the decision, including bringing suit in the United States Claims Court within twelve months of the date he received the final decision. The contracting officer sent the final decision to Mr. Krueger by certified mail, and he received it on November 20, 1989.

Also on November 13, 1989, the contracting officer issued Modification P00001 terminating Contract No. DLA 700–87–C–2005 for failure to make progress. The modification stated that it was the final decision of the contracting officer and listed Mr. Krueger's avenues of appeal and the applicable time limits. The contracting officer sent the modification to Mr. Krueger by certified mail, and he received it on November 20, 1989. In addition, the contracting officer also sent by regular mail a copy of the modification marked "duplicate original," which Mr. Krueger received on February 5, 1990.

As for the fourteen purchase orders, over a two year period, from January of 1988 to July of 1990, Mr. Krueger was notified that they had either lapsed or been cancelled by modification. Mr. Krueger did not explicitly demand a written final decision on any of the purchase orders, and no final decisions were issued.

Additionally, in early 1989, the DCMAO administrative contracting officer initiated a "Recommendation for Debarment for Poor Performance, Robert E. Krueger" based on Mr. Krueger's ongoing failure to meet the requirements of a MIL–I–45208 inspection system. On October 17, 1990, Mr. Krueger and his company were debarred until July 24, 1993.

On December 26, 1990, Mr. Krueger filed suit in this Court. He seeks (1) rescission of all terminations and cancellations of the contract and the purchase orders, (2) increased prices on contracts and purchase orders to cover additional costs that accrued due to delay, (3) additional monetary compensation plus costs and expenses, (4) rescission and voiding of all records concerning quality deficiencies, (5) rescission of the debarment, and (6) declaratory relief.[2]

**2.** Defendant properly argues that the Claims Court lacks jurisdiction to entertain claims for

## Discussion

This suit is governed by the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 601–613 (1988), which applies to any express or implied contract entered into by an executive agency for the procurement of property. 41 U.S.C. § 602. In its motion to dismiss, the defendant argues that the plaintiff filed his complaint after the end of the twelve-month statute of limitations imposed by the CDA in 41 U.S.C. § 609(a)(3). Alternatively, the Government argues that the portions of the complaint relating to the purchase orders must be dismissed because the plaintiff never requested a final decision from the contracting officer regarding these purchase orders as required by 41 U.S.C. § 605(a). Accordingly, this Court will consider the contract and the purchase orders separately.

### I. The C–2005 Contract

■■■ The CDA provides that a contractor may file an action directly on a claim in the Claims Court, but this action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim * * *." 41 U.S.C. § 609(a)(3). A statute of limitations is jurisdictional in nature, *Jones v. United States*, 9 Cl.Ct. 292 (1985), *aff'd*, 801 F.2d 1334 (Fed.Cir.1986), *cert. denied*, 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495 (1987), and must be strictly construed. *Kirby v. United States*, 201 Ct.Cl. 527, 539 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). As stated by the United States Court of Claims, "Congress has set the twelve-months limit, and this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize." *Gregory Lumber Co. v. United States*, 229 Ct.Cl. 762, 763 (1982). If the contractor does not begin an action within one year of the receipt of the final decision by the contracting officer, the Claims Court lacks the requisite jurisdiction to entertain the claim, and the contracting officer's decision is final and con-

clusive. *Handel v. United States*, 16 Cl. Ct. 70, 73 (1988).

■■■ The defendant points out that the plaintiff admittedly received the final decision of the contracting officer terminating the contract on November 20, 1989 and did not file the complaint in this Court until December 26, 1990, clearly outside the twelve-month time limit. Plaintiff avers that, although he received the final decision on November 20, 1989, it was not marked "duplicate original." According to the plaintiff, the DCSC procurement manual requires that the decision be marked "duplicate original," and, therefore, the November 20, 1989, receipt of the decision not marked "duplicate original" cannot be treated as a true receipt of the final decision. Instead, plaintiff asserts that the copy of the final decision stamped "duplicate original," which he received on February 5, 1990, constitutes the actual receipt of the final decision, and the statute of limitations should run from this date until February 5, 1991, thereby making his complaint timely.

In response, the Government asserts that the plaintiff has neither provided the Court with a copy of the DCSC manual nor cited any authority suggesting that such a requirement supersedes the clear language of the CDA in this area. This Court agrees with the Government's assertion. The CDA, 41 U.S.C. § 609(a)(3), clearly states that the action must be filed within "twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim," and numerous decisions have construed this requirement in accordance with its plain meaning. *See e.g., Handel v. United States*, 16 Cl.Ct. at 73; *Structural Finishing, Inc. v. United States*, 14 Cl.Ct. 447, 449 (1988); *H.H.O. Co. v. United States*, 12 Cl.Ct. 147, 159 (1987). Plaintiff received the contracting officer's final decision on November 20, 1989, and, based on the CDA, this is the date upon which the

declaratory relief, unless specifically authorized to do so. *See United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). The plaintiff concedes that the portion of the complaint

seeking declaratory relief is not appropriate for this Court. Therefore, this Court dismisses the portion of the complaint that requests declaratory relief without further elaboration.

twelve-month statute of limitations began to run. Thus, plaintiff had until November 20, 1990, to file his claim on the C–2005 contract, and he failed to do so. Therefore, this Court lacks the jurisdiction to entertain the matter, and the portion of the complaint dealing with Contract No. DLA 700–87–C–2005 will be dismissed with prejudice. *See Johns–Manville Corp. v. United States,* 893 F.2d 324, 327 (Fed.Cir.1989).

## II. *The Purchase Orders*

■ Next, this Court must consider the purchase orders upon which plaintiff bases part of his claim to see if they meet the requirements imposed by the CDA. The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605. Once the contractor receives the final decision of the contracting officer, he may then choose to bring an action directly on the claim in this Court. 41 U.S.C. § 609(a)(1). It is evident that this Court's review is predicated upon either a final decision of a contracting officer or the failure of a contracting officer to act timely upon a properly submitted claim. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 181, 645 F.2d 966, 971 (1981).

■ The Government argues that the plaintiff failed to submit a proper claim to the contracting officer regarding the purchase orders. Without the submission of the claim and the resulting decision of the contracting officer, the Government argues that this Court lacks jurisdiction under the CDA to entertain plaintiff's complaint. Plaintiff states that his letter of June 22, 1988, which detailed the status of the purchase orders and requested price increases for six orders, properly submitted the claim to the contracting officer.

This Court has identified certain characteristics which must be present in a demand to a contracting officer in order for it to qualify as a claim under the CDA. These characteristics are:

First, the letter to the contracting officer requesting relief must specify the relief desired; second, in the letter, the contractor must assert specific rights; third, the letter must request a final decision from the contracting officer; fourth, the contracting officer must have issued a final decision, or failed to issue such a decision within the statutory time periods; and, finally, the letter must clearly indicate the amount of monetary compensation requested.

*Robert Irsay Co. v. United States Postal Serv.,* 21 Cl.Ct. 502, 506–07 (1990).

These requirements raise several obstacles for the plaintiff's claims stemming from the purchase orders. First, the plaintiff is requesting both a rescission of the cancellation of the purchase orders and increased prices to cover additional costs. Regarding the cancellations, plaintiff has presented no evidence whatsoever that he submitted a written claim to the contracting officer contesting the cancellation of the purchase orders. Thus, he has failed to satisfy the jurisdictional requirement of the CDA necessary to have this Court entertain his claim stemming from the cancellations.

Second, as for the requested price increases, plaintiff relies on his letter of June 22, 1988, to meet the requirements of a written claim to the contracting officer. Plaintiff divides the purchase orders into two groups and contends that claims were properly submitted on the six purchase orders for which he requested specific price increases. As for the other purchase orders mentioned in that letter, the plaintiff appears to concede that those claims were not properly submitted because he did not specify a dollar amount.[3] Unfortunately for the plaintiff, even those claims for which he requested a specific amount do not meet all the requirements for a claim under the CDA, as stated by the Court in *Robert Irsay Co.* The letter does not request a final decision by the contracting officer for any of the purchase orders and

---

**3.** In his brief, plaintiff "submits that his claims are proper, to the extent that dollar amounts have been expressed" but "reserves the right to

pursue 'claims' found not to be within the jurisdiction of this Court, but which have here been presented."

**846**

so fails to satisfy all of the requirements for a claim under the CDA.

Also, according to the United States Court of Appeals for the Federal Circuit, there must already be a dispute between the Government and the contractor over the amount requested for a demand to qualify as a claim under the CDA. *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 878 (Fed.Cir.1991). Therefore, the court held that:

> Unilateral cost proposals or correspondence suggesting disagreement during negotiations, while they may ultimately lead to a dispute, do not, for purposes of the Act, satisfy the clear requirement that the request be in dispute.

*Id.* A review of the plaintiff's letter of June 22, 1988, reveals that the request for a price increase was a unilateral cost proposal and did not arise during a dispute over the amounts requested. Instead, there was an underlying dispute over the required level of inspection, and this letter was part of the ongoing negotiations between the parties. To satisfy the CDA, a "claim must seek payment of a sum certain as to which a dispute exists at the time of submission." *Id.* There was no dispute about the amount requested by the plaintiff because it was a unilateral cost proposal, and the Government had not yet responded to it. Therefore, the letter does not qualify as a claim under the CDA.

These jurisdictional inadequacies preclude this Court from considering the plaintiff's complaint with respect to the purchase orders. Because the plaintiff failed to submit a proper claim to the contracting officer as required by 41 U.S.C. § 605(a), this Court cannot exercise jurisdiction under 41 U.S.C. § 609(a)(1). Accordingly, this portion of the plaintiff's complaint is dismissed without prejudice. *Al–Kurdi v. United States*, 16 Cl.Ct. 660, 661 (1989). To pursue his purchase order claims, the contractor should prepare a precise claim that demands a specific amount and requests a final decision, properly certify the claim (if over $50,000), resubmit the claim to the contracting officer, and, if there is then an adverse decision by the contracting

officer, appeal either to the appropriate board or to this Court. *Technassociates, Inc. v. United States*, 14 Cl.Ct. 200, 212 (1988).

### CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss is granted. The portion of the plaintiff's complaint pertaining to the C–2005 contract will be dismissed with prejudice, and the portion of the complaint pertaining to the purchase orders will be dismissed without prejudice.

No costs.